15 minutes shared by the appellants and 15 minutes shared by the Appellees. Mr. Dickerson for the appellate. Good morning, Your Honor. May it please the Court, my name is Alex Dickerson. I'm here on behalf of Appellant Metro. I'm going to speak to the Court for seven minutes on the issue of applicable non-bankruptcy law. My colleague with the State... What? Say that again. I'm sorry, Your Honor. You're going to speak to us on what? On the issue of applicable non-bankruptcy law and the textual interpretation of 511. My colleague with the State will speak for seven minutes on the issue of supremacy clause and then we'd like to reserve one minute for rebuttal. Okay. Your Honor, Your Honor's Congress enacted Section 511 to fix a problem. The trustee is asking this Court to interpret the phrase applicable non-bankruptcy law in such a way that it brings the problem back. Metro contends that this phrase is a simple directive used to establish the difference between Title 11 law or bankruptcy law and all other sources of law outside of Title 11 or non-bankruptcy law. This source-based position is consistent with the plain language of Section 511, the context in which 511 was enacted, the legislative history, and is supported by cases that have interpreted that phrase in Section 511 and in other sections of the Bankruptcy Code. Conversely, the trustee's position is hard to delineate, hard to apply, and might threaten the State's concurrent right to enact bankruptcy legislation. Well, hasn't the law always been that after the bankruptcy is before the court and in the bosom of the bankruptcy court that you cannot charge a penalty? You can charge interest. It used to be you couldn't charge interest at all, but hasn't the law always been that a penalty is not to be charged because it comes out of the pockets of the, I guess the Chapter 13 case or in a straight Chapter 7 case, comes out of the pockets of the unsecured creditors? Your Honor, it's true that Sections 502 and Section 506 of the Code, which govern pre-confirmation allowances, do not include the word penalty. And so by implication, it could be concluded that they are against penalties. But in the case of States which are entitled to determine their own penalties and determine their own interest rates, Metro and the State would contend that the ability to delineate one or the other is also the ability to establish one for purposes of a bankruptcy proceeding. But yes, Your Honor, I agree with the concept that . . . What we're talking about here is the penalty for non-payment of taxes during the period that the case is before the bankruptcy court. Yes, Your Honor, if the statute, the plain language of the Tennessee statute established that it was penalty, I would agree with that, Your Honor. However, the plain language of Section 511 establishes that it is an interest rate in which the State is empowered to do. Well, here's the question for me. This is in the category of over-secured creditors? Yes, Your Honor. And 511 authorizes the payment of interest to enable a creditor to receive the present value of the allowed amount of the tax claim, correct? Yes, Your Honor. Okay, so that's where we are. And so 511 authorizes that. When you get to the testimony that's in the record, Tennessee has admitted that 18 percent exceeds what is required to maintain the present value of the tax claim. So we've got the code law that says why you can charge interest. We've got the admission that the 18 percent exceeds that. How can we do anything but think that if it exceeds what it's authorized to obtain under the code, then it is in fact a penalty? Well, Your Honor, with respect to counsel for the State, I think that whether or not that exceeds the present value, first of all, I'm not sure if that's actually part of the equation anymore. I think that prior to 511, bankruptcy courts were supposed to be in the business of determining whether the interest rate effectively reflected present value. I think that's what it was. However, I think the language of 511, especially the first part of 511, which is I think what we're traveling under, which talks about for the interest rates for tax claims. So it doesn't say anything about present value with respect to the interest rates for tax claims being deferring to applicable non-bankruptcy law. Second of all, I'd also like to point out... Help me with that. I'm looking at 511 now. Yes, Your Honor. I thought you were traveling under the payment of interest to enable a creditor to receive the present value of the allowed amount of tax claim. That's because you fall in the category of an over-secured creditor in which that's the specific thing at issue. Well, Your Honor, I think I may have misstated that. I believe we fall under the first part of that statement. If any provision of this title requires the payment of interest on a tax claim, then the rate of interest shall be the rate determined under applicable non-bankruptcy law. Because that would be... All of those phrases are qualified by shall be the rate determined under applicable non-bankruptcy law. But I'm struggling because it seems to me in the context in which this case arises as an over-secured creditor, there is a specific issue. Because over-secured creditors are allowed to obtain interest to receive the present value. If you have conceded that this is more than the present value, I don't understand what you're traveling under that would allow you to then argue that the additional 6% is not in fact a penalty. Your Honor, I would take issue with the concession that this is reflective of present value. I think the present value can exist in different ways in bankruptcy than it does in non-bankruptcy. For instance, as a non-bankruptcy claim, that's something that can be subject to be collected immediately. So 12% interest may make sense there. Whereas in bankruptcy, you're not going to collect on that money until three or five years out. And so a different present value may be adequate for that. So then why isn't this a bankruptcy law as opposed to a non-bankruptcy law? Well first of all, Your Honor, I think... That's the whole point you're trying to argue. Yes, Your Honor. That's my position. First of all, the plain language only yields METRO's source-based interpretation. I don't... In all due respect, I don't get that. In looking at this, I think your Tennessee Section D, for purposes of any claim in a bankruptcy proceeding, is a bankruptcy law. I mean, it just cries out bankruptcy. It says bankruptcy. Well, I think, Your Honor, what non-bankruptcy law was intended to do wasn't supposed to be a grand declaration of what states' rights were with respect to enacting bankruptcy legislation. I think it's just a shorthand way of referring to law outside of the code. And I think... So you're saying the only kind of, quote, little bankruptcy law is big capital B bankruptcy code in the U.S. code sense. That there's no state little B bankruptcy law. Is that what you're saying? No, I think there are... There are states' bankruptcy laws. I just don't think that Congress is using this particular phrase to differentiate between when a state can enact a bankruptcy law versus when a state is not entitled to under concurrent authority. What if they said it was over 50 percent? You know, I mean, it looks like just a pretext. The legislature came along and said, oh, well, we can't charge a penalty. So we'll just change what we've been charging as a penalty now and call it interest when it's in bankruptcy. Now, that's on its face pretextual. Well, and Your Honor, I think that there, that equal protection can prohibit that from being set to use for a rate 50 percent would be above that. I think there are other protections to prevent it from being that high. And certainly rational basis under the equal protection is a way to attack that. But as far as the interest rate itself, I think that there's no identification that this is not an appropriate level of interest. And I think the state was... Alice in Wonderland sort of effect, you know, Alice can make any word mean anything you want it to mean. And that's what the Tennessee Section D says. For purposes of any claim in bankruptcy, the assessment of penalties constitutes the assessment of interest. We declare it that way. But Your Honor, if Tennessee's entitled to set an interest rate and they're entitled to set a penalty, isn't that authority inherent that they be able to set an interest rate in certain circumstances? But 511A says the rate of interest should be the rate determined under applicable non-bankruptcy law, which is what you're charging regular people as opposed to claims in a bankruptcy proceeding. Yes, Your Honor. We just, again, we think that that refers to things that aren't... Right. Go back to your source base. And we have a problem that we have four of you trying to share half an hour. Yes, Your Honor. And you have three judges who love to ask questions. So I am now going to say, now that you have used so much time, we're going to stick to exactly what you all say. It's not a good way to decide how to argue a case. We will give the State of Tennessee seven minutes, and then the other side should be forewarned to divide your time accordingly. Good morning, Your Honors. Gil Gelderts on behalf of the State of Tennessee. And I'd like to address, first of all, the question about Tennessee conceding that this interest rate is more than what would be required under a present value analysis. The record, if you'll look closely in the record, I actually made that statement at oral argument before the bankruptcy court below. And it was taken out of context, I believe. It wasn't a pure concession of present value. The Tennessee legislature has said that the present value of unpaid tax claims in Tennessee shall be 18%. In non-bankruptcy cases, non-bankruptcy delinquent taxpayers, the interest rate is 12%, and there is a penalty of 6%. The enactment of Section D was in response to an earlier decision of the bankruptcy court, which said that penalties, post-petition penalties, were not allowable on an over-secured claim. But if you're treating regular claims or regular situations as interest of 12% and penalties of 6%, how can you go about declaring that in bankruptcy proceedings the 6% penalty constitutes interest? The way that we, first of all, look at what the Tennessee legislature is doing in this enactment of this law. They're doing an end run around a decision. They're complying with the decision. And they're saying that we have tax authority, and we have the ability to determine assessments on delinquent tax. If the state of Tennessee had done the same thing for all people and said, we're going to call the whole 18% interest now for everybody, then you would have an interest rate under 511A determined under applicable non-bankruptcy law, because it's applying to everybody. But the state of Tennessee didn't do that. For whatever reason, they didn't want, in regular situations, they didn't want regular people to think they were paying interest of 18%. From the record, I assume that is correct, and that is what the record reflects. But what Congress said in 511A is that the rate of interest shall be determined under applicable non-bankruptcy law. And our position, the state and Metro's position, is this is non-bankruptcy law. This is not an attempt to regulate the debtor-creditor relationship. It's not an attempt to set an interest rate on tax claims that do not belong to instrumentalities of the state of Tennessee. But the state says it only applies in bankruptcy. Right. It does. You say that's not bankruptcy? It is not bankruptcy. It is a tax law. Now, that's the counsel. It is pursuant, look at what the legislature is doing. It is determining its assessments on unpaid tax claims. And that is within the inherent sovereign authority of the Tennessee legislature to do that. Yeah, they can do whatever they want, but that doesn't mean that for U.S. bankruptcy cases that what Tennessee labels something determines whether it is little bankruptcy law or non-bankruptcy. But then we're looking at what is the meaning of non-bankruptcy. Right. That is the key to the case. Right. And I would submit that the bankruptcy appellate panel below simply did a simple analysis that it includes the word bankruptcy, therefore it must be a bankruptcy law. And the state's position is that... It is applicable exclusively in the bankruptcy context. And that's different from just including bankruptcy. If they had made the law, all Tennesseans pay 18 percent, including those in bankruptcy. That's not a specific bankruptcy law because it is applicable across the board. Here what you have is the legislative history that we've spoken of, which I think is more indicative of renaming a penalty and finding it remains of a punitive nature so that the state can continue to get the full amount. We understand the logistics here and the purpose behind it, but I'm not hearing what would prevent this from rationally being a bankruptcy law except for a source versus content restriction, which I don't think is a mandatory distinction that is required to be applied here. Again, I look to what the legislature is doing and under what authority is it traveling. And it's traveling under its authority to determine assessments for its tax claims in a federal bankruptcy proceeding. And I think it's within that inherent authority to say the legislature believes that, yes, in other cases, this assessment is determined to be a penalty and it's determined to be an interest rate in other cases. But we feel, the Tennessee legislature feels, that in a bankruptcy case, it's all interest. Why do you think the state of Tennessee feels that way? Well, I've looked at that question and it's an interesting question. Unfortunately, the provision in the tax code dates back to about 1933, I believe. And unfortunately, the history is kind of thin. But why do you feel, as of just a few years ago when you amended this statute, that in the bankruptcy context, this is all interest? The arguable reason is to avoid a particular U.S. court case, but do you have some meritorious reason? Well, look at how the assessment is functioning. It's a time value. It becomes part of the tax lien. Therefore, when subsequent purchasers at a tax sale come to buy the piece of property, assuming the taxes haven't been paid, they have to pay the penalty, even though they have committed no wrong. So, if you look at the totality of this statute and the circumstances in which it was enacted, it's clear to me that for whatever reason, it was determined to be a penalty and interest rate outside of bankruptcy cases. But the legislature is saying, we feel that for purposes of our claims in bankruptcy cases, this constitutes interest. Well, one quick question. Please. Under your argument, all states are now authorized to say to the bankruptcy courts, we understand that you will not accept our penalties, so all of our statutes that include a penalty that is applicable to this estate is now going to be interest. We're done. Now, we're going to run the penalty up to about 75%. Seriously. I hear you. I am going to use my presiding prerogatives here. You have one sentence to answer this question, and then we are done. I would look to the California case, Fowler, in which this was examined under the statutory guidelines and under the constitutional guidelines, which I haven't been able to address, but that's okay. Thank you. But I would look to that for an explanation of why this is a non-bankruptcy law. In California, the entire assessment is considered a penalty under state law, and they have the exact same provision that Tennessee does. Thank you very much for your time and consideration. Thank you, and we'll rely on your brief for the other issues in the case. Good morning. May it please the Court. My name is Alex Colville. I'm here for the appellee, Mildred Bratt, rather the estate of Mildred Bratt. Your Honor, I have reserved four minutes for my portion of the argument. Four minutes. We've kind of made your argument for you. Thank you. I look forward to it, and if I may, I'd like to focus on the conflict preemption portion of the argument. Your Honors, this is a case about a conflict between two statutes, and neither statute is ambiguous on its face. The language is very clear. The argument boils down to the basic rules of statutory interpretation. The appellants cite the Ron Paul Supreme Court opinion, which sets out the foundations of statutory interpretation, and rule number one is we'll look at the plain language of the statute, and once again, the language could not be any more clear. Under Tennessee law, property taxes are a lien on the real estate. It's a statutory, non-consensual lien. That part is important, because in this circuit, voluntary agreements in a situation with a consensual lien do allow penalties in bankruptcy. Chapter 13 treats these liens as secured claims, and we have to look at the two sections that govern secured claims in bankruptcy. Section 506, number one, Section 506 has enumerated items. There's only four of them. They're interest, fees, costs, and charges. Those are the only items that the creditor may be allowed to charge in a situation with a secured claim. Another section of the bankruptcy code is Section 1325. It authorizes interest to secured creditors. It also addresses the lien issue, if the lien is satisfied under applicable non-bankruptcy law. The state did bring up an argument about the lien remaining on the property, but we believe that Section 1325 answers the question about the lien. So this brings us to the second rule of statutory interpretation. If the item is not listed, that item is excluded. We cannot add it back to the statute. The word penalty is used several other times in the bankruptcy code. In fact, there are only four times it is used, and only one use applies to claims. Section 726 talks about subordination priority of claims in distribution from the estate, and it does provide a remedy to the state. Section 726 subordinates penalties to general unsecured claims. So that would answer the state's concern about payment of penalty. Once again, both statutes are very clear. Under 511, secured creditors can charge interest. Tennessee says that interest is 12%. We need to talk about the purpose of the statute. The record contains only one reference to the purpose of 511, and that was to set a uniform standard for interest rates on property taxes. It did not talk about ensuring that both bankruptcy and non-bankruptcy individuals pay the same amount. Equality was not the purpose. It was simply to set a uniform standard. Has the legislature ever asked the attorney general's office for an opinion about this, the validity of this proposed statute? You know, as I understand, in Tennessee, the legislature, if it wants to, can ask the attorney general for an opinion, and in a lot of cases where there's some doubt, they do so. You don't know in this case whether they ask for an opinion or not. I'm not aware, Your Honor. I do know that the attorney general has changed since the law was enacted. It was enacted under a different attorney general. But I'm not aware whether the state has changed. There would be a record because the response of the attorney general is of a record, opining on either the constitutionality or the propriety of the law. That is correct. The state's position here is supported by the attorney general. And your red light is on, so you can. Your Honor, if there are no further questions, my colleague, Ms. Schweitzer, here, will elaborate on the second issue. Thank you for your attention. Good morning. May it please the Court, Tracy Schweitzer appearing on behalf of Henry Hildebrand, the standing Chapter 13 trustee for the Middle District of Tennessee. Excuse me. I would like to respond actually to the arguments of the state and Metro with respect to whether or not the amendment to Tennessee Code annotated is an applicable non-bankruptcy law. The first statement was that the trustee's position brings back the problem that the statute was designed to solve. And I would submit that that is simply not true. The statute provides that taxpayers not in bankruptcy would pay 12%, and taxpayers in Chapter 13 would pay 12%. So both are paying 12%. The state and Metro's position that applicable non-bankruptcy law is anything outside the bankruptcy code is simply too broad and was rejected by the bankruptcy appellate panel. This court in Richardson v. Schaeffer clearly stated that state and federal legislatures have concurrent authority to promulgate bankruptcy laws. The court further said that states retain the power to act where the federal government has declined to do so or whereas in the area of exemptions it is decided to permit states to act. Schaeffer could be read to hold that a state promulgated bankruptcy-specific statute as we have here is in fact a bankruptcy law. Is there a definition? Federal Section 511A uses the term applicable non-bankruptcy law. Is that term ever defined anywhere that you know of? No, other than Black's Law Dictionary. No, unfortunately there is no place that I am aware that either in a bankruptcy case, a court of appeals case or any other place. Or in any federal bankruptcy statute? No, so the answer, Your Honor, is no, I am not aware of anything. Or legislative history to 511A, which would be the logical place if there had been like a committee report to say what they meant by non-bankruptcy law. I don't believe it's in the legislative history there either. However, Congress did see fit to use terms in other places in the bankruptcy code such as in Section 522 regarding exemptions allowing debtors to opt for federal exemptions or non-Federal exemptions specifically referred to state or local law. Section 511 does not specifically direct one to state or local law. It simply says non-bankruptcy law. And the trustee's position would be that non-bankruptcy law is just something outside of bankruptcy. It is content specific, not store space. Both those categories have applicability problems, don't they? Tell me how you would respond to the argument that a content restriction based on the language of the statute is exceedingly difficult to apply and will result in conflicting decisions. Based on this statute in this case, I think the problem with the content is it goes beyond the scope of the bankruptcy code. There is nothing in the bankruptcy code that entitles an over-secured creditor to anything other than interest, costs, and fees.  Penalties are punitive. Interest is not designed to be punitive. Interest is designed to compensate a creditor. It's compensation for the time value of money so that they are paid their present value, which is provided for in the bankruptcy code. Well, the distinction that you're opposing, Counsel, we're both raising, is that source-based restrictions, it's a clean decision. Either it's everything outside the bankruptcy code is good. Your position is content restriction would work, functions better. I'm just asking you, are there inherent problems? Since there's nothing that requires us to choose one or the other, are there inherent problems with applying a content restriction? In this instance, I believe there are. I believe the court should actually be more concerned with the state and Metro's position because what they're advocating is an interpretation that goes beyond the plain meaning of Section 511. 511 says they're entitled to interest. They're not entitled to... Here it's simple. In this instance, in the facts and the statutes before the court today, I believe it is simple. So under 511A, as long as the state is charging a consistent rate of interest in all situations, little bankruptcy law, non-bankruptcy law, whatever, as long as there's a consistent rate of interest, it doesn't really matter whether it reflects present value. The state can denominate this as interest and that can then be utilized. Is that right? Yes, Your Honor. So there's a sort of a tension in that it gives the state the power to call things that are not really present value, which is most people's definition of what interest should be. They can call something. They could have a rate of 18% across the board when the interest that you get on a savings account is less than 1%. They can do that. I actually believe that they could, and I believe that if they had said that rather than saying, for purposes of bankruptcy, the penalty shall be called interest, we probably wouldn't be standing here. So they could have, when this earlier case arose from the bankruptcy court, they could have amended their law to say, for all people, the interest rate is 18%. I do believe they could have, yes. And to address a question that was previously asked, I am not aware, and I do not believe that any of my colleagues are aware, of whether or not the Attorney General was consulted before the enactment of this. So your opponents argue for a source-based rule. Why is that not an equally acceptable interpretation, and why shouldn't we adopt that? Because source-based means that it's anything outside the bankruptcy code. Section 511 doesn't say non-Title 11, non-bankruptcy code. It says applicable non-bankruptcy law, and the state promulgated a law that is specific, a subsection of a statute that is specific and only applies to claims, over-secured property tax claims in bankruptcy. So what would your definition of little bankruptcy law be that the states do? Anything that they say is pertaining to bankruptcy situations, or can they have their own law of bankruptcy, or what? They cannot have a bankruptcy law that conflicts with what Congress has enacted in Title 11, but they can make laws that would impact or involve bankruptcy. They just can't be in direct conflict, which this law is, because this law is imposing a penalty, which is punitive, going beyond the fees, costs, and interests that a secured creditor is entitled to. So do you have any examples of little bankruptcy laws that states have enacted that are appropriate, in particular in Tennessee, since that's where you are? I think that state exemption laws could qualify as little bankruptcy laws because debtors are entitled to opt for the federal exemptions, and they're entitled to opt, if their states permit, entitled to opt for state exemptions. So that would illustrate that the source-based rule is not, in fact, followed in that context, because the state source is the state legislative law. Is the state legislative law, but the bankruptcy code permits states. Permits it, so it's an explicit permission. So is it part of the Capital B Bankruptcy Code? I don't believe it's necessarily part of the Capital B Bankruptcy Code, but the bankruptcy code permits the states to have. The entire process of bankruptcy and the distribution and so on of assets depends on the property rights theories that the state itself establishes, right? I mean, the federal government doesn't establish property rights in real estate or in other assets. No. That's normally a state common law and statutory type of definition. That is. And the bankruptcy law simply operates on those property rights in the distribution when there is a bankruptcy case, right? It does. My point is the whole bankruptcy code is dependent on the state creating property rights. It's dependent on the state creating property rights, but back to a comment that the state and Metro made, that this is not regulating debtor-creditor relationships. That's exactly what this law is doing. This law is stating that a taxpayer who's in a Chapter 13, the debtor, it is dictating what the debtor will pay with respect to their property tax claim in their bankruptcy, the creditor. So it is, in fact, dictating a debtor-creditor relationship. And it impacts the way the bankruptcy flows from there because that enables them to take money out of the bankrupt estate that would have otherwise gone to, for example, unsecured creditors. Yes, Your Honor, that's exactly what it does. And it theoretically could go a step further, and while it's taking money from other allowed claim holders, principally general unsecured creditors, it has the potential to perhaps directly impact a Chapter 13 debtor and make their Chapter 13 plan completely not feasible. But the same thing applies in Chapter 7 and in Chapter 11. Same idea, right? Yes, because it's Section 511. It would apply to all statutes. And I see that I'm out of time. Thank you. Just briefly, Your Honor, I do want to point out that the Court has pointed to a couple of different ways that the statute could have been, the Tennessee statute could have been written differently. And I'd just like to point out that just because the Tennessee statute could have been written differently doesn't necessarily mean that it's unconstitutionalized written or that it's inapplicable. I think the purpose of 511 tells us a lot here. The whole point of it was to get the bankruptcy courts out of the business of having to look into the statutes and determine the propriety of interest rates. And by having the courts just go back and determine whether or not it's a bankruptcy law or a non-bankruptcy law, I believe puts the bankruptcy courts right back in that position. I don't think there's anything in 511 that demonstrates that Congress cared about a distinction between bankruptcy or non-bankruptcy debtors or that they were concerned about anything like that. And I just want to point out that Your Honor asked, Judge Moore, you asked about the legislative history. There is a little bit of information there. There's a parenthetical that talks about federal, state, and local law. We think that's a pretty good indication of the fact that they wanted to make a content-based, a source-based instead of a content-based. This is the legislative history of 511? Of 511. And in conclusion, I just want to say that METRA respectfully requests that this Court reverse the decision of the bankruptcy courts below and hold that the tenancy provision constitutes applicable non-bankruptcy law that's not preempted by the Supremacy Clause. Also, METRA has briefed an equal protection argument, but neither FLE has responded, so METRA would ask that this be treated as an abandoned claim. Thank you. Thank you. Thank you all for your argument. The case will be submitted. Would the Court call any remaining cases?